**In the Matter of the ADOPTION OF Elizabeth Ann HARRIS, a minor child.**

**No. 55768.**

Supreme Court of Iowa.

June 26, 1974.

Pappas & Dunn, Mason City, for appellant.

Riter & Henneberg, Rock Rapids, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and HARRIS, JJ.

HARRIS, Justice.

The natural mother has brought this appeal from a decree allowing the adoption of her daughter by the present wife of the child's father. We affirm.

Orin Harris and Daun Harris were married on February 12, 1966 and were divorced on July 2, 1969. On August 2, 1967 they became parents of a daughter, Elizabeth. The divorce decree gave custody of Elizabeth to Daun and required Orin to pay $65 monthly child support.

After the divorce Daun and Elizabeth moved to Minneapolis, Minnesota where Daun took a job. Orin visited Elizabeth several times in Minneapolis and in August of 1969 took her a few weeks for vacation. Because he was returning to school Orin made his home with his parents at Akron, Iowa. Daun found it difficult to provide for Elizabeth. After a time she decided to relocate her home. Under the circumstances she and Orin agreed it would be better for Elizabeth to remain indefinitely with Orin and his parents at Akron.

In September or October of 1969 Daun moved to California. Before leaving she spent some time visiting with her parents at Humboldt, Iowa. Elizabeth stayed with her for a week in Humboldt. Daun spent the last afternoon before leaving Iowa with Elizabeth. She left with the hope of establishing a home in California where she and Elizabeth could live together.

It is of crucial, if not controlling, importance that approximately a year and a half passed before Elizabeth and her mother would see each other again. Daun corresponded with Orin frequently by letter and phoned him from time to time about Elizabeth. She frequently expressed a desire to see her daughter but was unable to finance such a trip. Both parents agree it was not possible for Elizabeth to be sent to California.

In February 1971 Orin filed for custody of Elizabeth; Daun received notice of the application in California. The notice was her first knowledge of Orin's desire to have custody officially changed. Daun consulted a California attorney and thereafter returned to Iowa and obtained counsel here. Daun arranged to visit with Elizabeth the day before the hearing. She did not appear at the hearing but took Elizabeth to California.

The following day Orin obtained an order modifying the divorce decree and granting him custody of Elizabeth. It was four to six weeks later before he found where Daun and Elizabeth were living. With the help of California authorities Elizabeth was returned to his custody in Iowa. From then until the day before the hearing on the petition for adoption Elizabeth and her mother did not see each other.

Orin and Janice Elaine Harris (petitioner) were married April 3, 1971. Since that time Janice has cared for Elizabeth. Daun and Janice corresponded for some time concerning Elizabeth and agree extensive visitations by Daun are not in Elizabeth's best interests.

Daun returned permanently to Iowa in April of 1972 and took employment in Mason City. Orin and Janice had previously moved without advising Daun of their new address. Daun first learned of their whereabouts when she was notified of the petition for adoption.

This is not a case in which custody of the child is disputed. Daun agrees it is in Elizabeth's best interest to be in the custody of Orin and Janice. She states her opposition to the adoption stems solely from a desire to preserve rights for future contingencies. Daun expresses concern the new marriage may break up. She hopes Elizabeth may wish to see her natural mother when she is older. But she freely concedes it would be better for all concerned if she visits Elizabeth only infrequently.

The sole agonizing question presented is whether it was wise to allow the adoption after balancing the interests of Elizabeth, Daun and Janice.

I. "The general principles governing review of adoption proceedings are well established. Our review is de novo. In determining whether the adoption should be granted we are here required to view the evidence in the light of three competing interests, the interest of the child, the interest of the natural mother and the interest of the stepmother. See Uhlenhopp, Adoption in Iowa, 40 Iowa L.Rev. 228, 229 (1955). The welfare of the child is paramount but not the only consideration. Adoption is drastic. It is permitted only if a balancing of the competing interests shows it is wise. In re Adoption of Clark, 183 N.W.2d 179, 184 (Iowa 1971), and citations." In re Adoption of Keithley, 206 N.W.2d 707, 711–712. See also In re Adoption of Vogt, 219 N.W.2d 529 (Iowa 1974).

Daun argues the trial court should not have ended her relationship with Elizabeth by granting the decree. But the trial court did not decide to end the mother-daughter relationship. Rather it proceeded on the observation the relationship had already ceased to exist. Under § 600.3, The Code, the consent of a noncustodial parent is required for an adoption so long as such a parent is making either material or monetary contributions to the support of the child. In re Adoption of Vogt, supra. We are of course keenly aware of the heartache which results to a noncustodial parent who falls outside the class of persons from whom consent is required. But the interests of such a parent must yield to the child's. Where a meaningful parent-child relationship has ceased to exist through no fault of the noncustodial parent, or for reasons which can be justified, our cases proceed on the theory the child was not at fault either.

After balancing the interests of the child, of Daun, and of Janice we believe the conclusion of the trial court was right. The paramount interest is that of Elizabeth. Events over which she had no control have caused her relationship with Daun to fade into nonexistence. Elizabeth's first need is to have a stable home life. In seeking that stability she has necessarily accepted Janice as her mother figure. The relationship has become sealed with the passage of time. This is not a case, such as In re Adoption of Keithley, supra, where the child has developed and maintains strong ties with the natural mother.

Janice's strong interest favoring the adoption scarcely calls for comment. It seems trite to say it will assist her relationship with Elizabeth to have the security of the adoption decree. Indeed the decree will only adjudge the existence of a relationship they have already developed.

To Daun of course the adoption will adjudge the end of her relationship with Elizabeth. But the adjudication merely confirms a termination which actually took place long ago.

Affirmed.